IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SCOTT ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:14-CV-5074-MDH |
| ) | |
| TYSON FOODS, INC., JAMES SHREVE, ) | |
| and KATHY HOOD, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ORDER

Before the Court is Defendants' Motion for Summary Judgment (Doc. No. 33). The Court has carefully considered the motion and related legal suggestions, and has also heard oral argument from the parties. As set forth herein, Defendants' Motion for Summary Judgment (Doc. No. 33) is **GRANTED**.

## BACKGROUND

Plaintiff, Scott Robinson, previously worked for Defendant Tyson Foods, Inc., in its facility located in Noel, Missouri. The Noel, Missouri facility has three departments, however only two departments are involved in this case - the truck shop and live haul departments. Tyson contends each department at this facility is responsible for its own labor and costs, in essence operating independent of each other. However, it is undisputed there was some cross over at times between employees from the live haul and truck shop departments when employees from the other department would assist or perform duties for the other department, regardless of their job description. For example, from time to time, mechanics may assist in cage repair (a live haul

1

department job) and cage repairers may assist with duties in the truck shop. Despite the occasional crossover of help between the departments, truck shop employees are classified as mechanics, while the live haul employees are classified as cage repairers. Mechanics are skilled laborers who repair and maintain Tyson's trucks and related equipment for Tyson's hauling operations. Cage repairers are non-skilled laborers who provide routine maintenance to the cages used to transport birds to other facilities.[1]

Plaintiff, Scott Robinson, was employed by defendant Tyson in the truck shop department beginning in May 2008.[2] Plaintiff was hired as a Class C Mechanic and reported to Bill McKee, the supervisor of the truck shop department. At the time Plaintiff began his employment he had no work restrictions or liver health issues. However, soon after his 2008 employment began, Plaintiff developed liver problems. In November 2008, Plaintiff's liver problems made him unable to work and he went on non-FMLA medical leave. In January 2009, Plaintiff received a liver transplant.

In April 2009, Plaintiff returned from his leave of absence to his same mechanic position. Upon his return, Plaintiff was subject to certain work restrictions, including a 50-pound weight restriction and a climbing restriction. It does not appear there were any issues with Plaintiff's restrictions in 2009. Approximately one year later, in May, 2010, Plaintiff developed stage 1 liver failure and underwent triple therapy medication. Plaintiff testified in his deposition that he was on a leave of absence for approximately one year during the time of his treatment – May 2010 through May 2011. However, the record before the Court is unclear based on a review of Tyson's team member attendance report – which does not reflect this leave. In addition, despite

---

[1] Mechanics generally receive higher wages than cage repairers.
[2] Plaintiff was employed by Tyson on two previous occasions in approximately 2001. However, neither of these employments are at issue in this case.

2

Plaintiff's deposition testimony, Plaintiff now disputes this fact in his opposition to summary judgment. Nonetheless, the Court does not find the issue regarding whether Plaintiff was or was not on leave during this time to be a material fact with regard to Plaintiff's claims under the Missouri Human Rights Act.

Regardless of whether Plaintiff did or did not take leave in 2010, it is undisputed that in May 2011, Plaintiff was working in his same position as a mechanic and it appears he remained subject to the same restrictions imposed in April 2009, which included a 50-pound weight restriction, a climbing restriction and a turning restriction.

In February 2012, Plaintiff was working the night shift where he primarily worked alone.[3] During this time, Plaintiff informed his supervisor that during one of his shifts he had lifted a brake drum, weighing in excess of 50 pounds, without assistance and in violation of his work restrictions. Plaintiff alleges he refused to perform a brake job on a vehicle after he had injured himself lifting beyond his restriction the night before. After Plaintiff reported this to his supervisor, Plaintiff's supervisors referred him to Kathy Hood, the complex's human resources manager. Plaintiff provided human resources with his doctor's note and was then put on a "short leave of absence." Plaintiff claims Defendant Hood put him on the leave of absence in order to research possible accommodations.

While on this leave, Plaintiff filed a Charge of Discrimination. The Charge of Discrimination was filed on or about March 7, 2012 and alleged Tyson had failed to accommodate him. The parties conciliated Plaintiff's Charge of Discrimination and as a result, Plaintiff returned to work and was paid for his short leave of absence. Plaintiff also withdrew his Charge of Discrimination. In addition, upon Plaintiff's return to work he no longer had a lifting

---

[3] Plaintiff states he disputes this fact, but offers nothing to contradict Defendants' statement.

3

Case 3:14-cv-05074-MDH   Document 48   Filed 07/02/15   Page 3 of 19

restriction.[4]  The record reflects that Plaintiff's doctor lifted his weight restriction shortly after Plaintiff filed his first charge of discrimination.

After his return from the short leave, and resolution of his Charge of Discrimination, Plaintiff claims he was then moved to the night shift.[5]  However, in Plaintiff's deposition he testified that it was during his night shift that he was forced to lift in excess of his weight restriction, the basis of his first complaint February 2012.  Further, Plaintiff also argues he was forced to lift in excess of fifty pounds after he returned from his short leave in March 2012.  However, Plaintiff has testified, and also confirmed in his affidavit, that his lifting restriction was removed when he returned to work in March 2012.  Plaintiff further alleges in November 2012 he was involuntarily transferred to the weekend shift and that he had to perform maintenance and repairs that required lifting in excess of fifty pounds.  Plaintiff makes numerous complaints about broken equipment and tools used for assisting in lifting, but again, all these complaints are with regard to his shifts after he returned in March 2012, after his lifting restriction had been removed by his doctor.

At some point in the fall of 2012, Tyson began negotiations with J.B. Hunt, Inc. to have J.B. Hunt assume the Noel, Missouri plant's long haul trucking operations.  As a result of this negotiation, Tyson decided to outsource the trucking operations and the Noel location no longer needed most of its trucks and trailers.  This in turn affected the truck shop department's employment needs.  Ultimately, based on the J.B. Hunt agreement, Tyson decided to eliminate four driver positions, a supervisor position (which oversaw truck and trailer dispatch), and two

---

[4] Plaintiff argues he was "compelled to remove his lifting restriction in order to continue working."
[5] Plaintiff disputes Defendants' statement he was working the night shift in February 2012. However, Plaintiff's own statement of facts are inconsistent – Plaintiff claims he worked the night shift from February 2012 through November 2012 (See ¶23), but then disputes he worked the night shift until he returned from his leave of absence on March 9, 2012 (See ¶ 21).

4

mechanics. The live haul department was not affected by J.B. Hunt's assumption of the long haul trucking operations because Tyson kept ownership of the bird cages and retained responsibility for the cage maintenance and repair. Tyson contends employee positions were eliminated based on seniority, and in accordance with their "Hourly Layoff Policy." Tyson eliminated Plaintiff and another mechanic, Tony Weeden's, positions. Plaintiff's hire date was 2008 and Weeden's was 2012. Tyson contends they were the two least senior mechanics.

Plaintiff, on the other hand, argues another employee, David Brown, was less senior than Plaintiff and should have had his position eliminated if seniority was the detrmining factor in who was laid off. Tyson agrees that Mr. Brown was less senior than Plaintiff, but argues Mr. Brown was not a mechanic. Tyson contends Mr. Brown is a cage repairer. Tyson admits Mr. Brown was hired in 2010 and on paper originally, Mr. Brown was identified as a mechanic. However, Tyson argues the designation was an administrative error because Mr. Brown was not hired as a mechanic. Tyson states when the error was realized in July 2011 it corrected the mistake, long before the J.B. Hunt agreement was entered into, and Mr. Brown was reclassified as a cage repairer. Mr. Brown is currently a cage repairer at Tyson.

In response, Plaintiff has submitted Mr. Brown's affidavit that states he was hired as a mechanic in October 2010 and then was moved to a cage repairer in July 2011. Mr. Brown's affidavit states he applied for a mechanic position in 2010, but was then transferred to a cage repairer (in essence that Tyson did not make a mistake in the original paperwork but transferred him from mechanic to cage repairer in July 2011). Mr. Brown further states he is currently classified as a cage repairer, although he does occasionally perform tasks at times for the truck shop, including fueling, preparing equipment for the start of the day, and other tasks that are sometimes requested. Mr. Brown also states in his affidavit that prior to the J.B. Hunt

restructure, "James Shreve offered me the opportunity to move back to the mechanic position, which I declined." There is no indication that offer was reextended or available to Mr. Brown at anytime contemporary with the J.B. Hunt agreement. Mr. Brown confirms that at the time Plaintiff's position was eliminated he was less senior than Plaintiff, but Mr. Brown also confirms that at the time of the J.B. Hunt restructure he was, and currently still is, classified as a cage repairer. He was therefore not subject to the layoff.

After learning of the J.B. Hunt agreement and elimination of his position, but before the effective date of the elimination of Plaintiff's position, Plaintiff applied for a leave of absence pursuant to the FMLA. Plaintiff states he applied for leave because he did not have another available position to apply for within Tyson's facilities. As part of the employment changes associated with the J.B. Hunt agreement, Plaintiff was offered the opportunity to transfer to a "non mechanic" position with Tyson. In February 2014, Plaintiff returned to work after the FMLA leave as a USDA helper. Shortly thereafter, Plaintiff requested a transfer, which was granted, and he was moved to a floor washer position. Over the next six months, Plaintiff took several leaves of absences. In May or June 2014, Plaintiff went on permanent total disability. Plaintiff took personal leave from September 2014 through October 2014. Plaintiff's employment officially ended on October 18, 2014. Plaintiff is currently no longer able to work due to his permanent, total disability.

## **STANDARD OF REVIEW**

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp., v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986). The moving party is entitled to summary judgment as a matter of

law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, (1986). Once the moving party has established a properly supported motion for summary judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248.

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Id.* at 248-249. In addition, "while employment discrimination cases are often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment." *Shirrell v. Saint Francis Med. Ctr.*, 24 F. Supp. 3d 851, 855-56 (E.D. Mo. 2014); citing *Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010); citing *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir. 1999). In fact, there is no separate summary judgment standard for employment discrimination cases, and "it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." *Id.*

## DISCUSSION

### I. Count I – Failure to Accommodate.

Count One of Plaintiff's Petition is "Violations of the MHRA – Failure to Accommodate." Plaintiff claims "defendants repeatedly and willfully failed to accommodate Plaintiff's condition, even after reaching an agreement with Plaintiff and the MCHR." Plaintiff further alleges he "was compelled to work without accommodation, and exceeded his doctor's

7

Case 3:14-cv-05074-MDH   Document 48   Filed 07/02/15   Page 7 of 19

restrictions in order to remain gainfully employed, maintain his insurance, and purchase his life-sustaining medications."[6]

In deciding a case under the MHRA, courts are "guided by both Missouri law and federal employment discrimination case law that is consistent with Missouri law." *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 818 (Mo. 2007). See also, *Finley v. Empiregas, Inc. of Potosi,* 975 F.2d 467, 473 (8th Cir. 1992). If an employer's consideration of a disability contributed to its unfair treatment of an employee, that consideration is sufficient under the MHRA. *Id.* at 819. "Missouri uses the contributing factor standard in analyzing an alleged MHRA violation." *Id.* at 820-822. To make a prima facie case under the MHRA, Plaintiff must show: 1) that he is a member of a protected class because of a disability protected by the statute; 2) Defendant took an adverse action against Plaintiff; and 3) Plaintiff's protected status was a factor in the employer's adverse action. *Gamber v. Missouri Dep't of Health and Senior Servs.,* 225 S.W.3d 470, 475 (Mo. App. W.D. 2007)(in affirming the trial court's directed verdict in favor of Defendant the court also stated "because Missouri law provides the prima facie case, we do not look to federal law for the prima facie case").

In a reasonable accommodation case, the "discrimination" is framed in terms of the failure to fulfill an affirmative duty - the failure to reasonably accommodate the disabled individual's limitations. The Act compels employers to modify their work requirements to enable disabled individuals to have the same opportunities as their non-disabled counterparts. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir.1999)(analyzing claim under the ADA).

Before initiating a civil action under the MHRA, a claimant must exhaust administrative remedies by timely filing an administrative complaint and either adjudicating the claim through

---

[6] Plaintiff has not brought a claim under the ADA.

the MCHR or obtaining a right-to-sue letter. *Alhalabi v. Missouri Dep't of Natural Res.*, 300 S.W.3d 518, 524 (Mo. Ct. App. 2009); citing *Tart v. Hill Behan Lumber*, 31 F.3d 668, 671 (8th Cir. 1994). The doctrine of exhaustion of remedies is a jurisdictional requirement. *Id.*, citing, *Pettigrew v. Hayes*, 196 S.W.3d 53, 56 (Mo.App. W.D. 2005).

Exhaustion is central to the claims brought under the employment statutes because it provides the EEOC the opportunity to first investigate the alleged discriminatory practices and perform its role of obtaining voluntary compliance and promoting conciliatory efforts. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). In *Williams,* the 8th Circuit upheld summary judgment when the plaintiff's second charge of discrimination made no reference to race discrimination but was confined to retaliation. *Id.* The Court held that the charge was "highly specific" and related only to a claim for retaliation. *Id.* The Court found the claims of race discrimination were separate and distinct from the claim of retaliation and therefore could not survive summary judgment. *Id.* at 223. "In order to exhaust all administrative remedies, the claimant must give notice of all claims in his administrative complaint." *Perkins v. Davis*, 2015 WL 3572501, at *5 (E.D. Mo. June 5, 2015).

It is undisputed that Plaintiff's first charge, which Plaintiff withdrew after conciliation, alleged a failure to accommodate. Plaintiff subsequently filed his second charge which forms the basis for this lawsuit. A review of the second charge, the only charge of discrimination that forms the basis for this lawsuit, reflects Plaintiff made the following allegations:

> I have been employed as a mechanic by Tyson Foods, Inc. since May, 2008.
>
> During my employment, I have worked in the non-union truck repair shop in the unionized chicken processing plant as a maintenance person. On January 28, 2013, I was notified that my mechanic job was going to be abolished effective February 16, 2013. An employee who was hired at least two years after me did

> not have his job affected. However, this employee has worked as a truck mechanic for the past year and remains in the truck shop working as a truck mechanic. In addition, human resources advised I should apply for open positions in the chicken processing plant and indicated they would hold open a maintenance position for me. This turned out to be untrue although the maintenance supervisor confirmed he needed to fill three slots. The anxiety of possibly losing my job has aggravated my disability to where I cannot work. I previously filed a charge of discrimination … based on my disability and now it appears I am being retaliated against. The truck maintenance supervisor has told my co-workers that he would get back at me even if it took getting rid of 5 or 6 junior employees to get me for getting him into trouble.
>
> I believe I am being set up for discharge because of my disability and in retaliation for filing a previous charge of discrimination in violation of The Americans with Disability Act…

Here, Plaintiff's current charge of discrimination is specific with regard to his claim that he was allegedly retaliated against for filing his first charge of discrimination (and possibly retaliated against for his alleged disability). However, there are no allegations within the second charge of discrimination regarding an alleged failure to accommodate. As such, the Court finds that Plaintiff's second charge of discrimination raises only the allegation of retaliation and does not address a failure to accommodate claim. As a result, this Court finds the second charge of discrimination failed to exhaust Plaintiff's current failure to accommodate claim against defendants under the MHRA.

In addition, even if it could be found that Plaintiff's failure to accommodate claim somehow arises out of the allegations contained in the second charge of discrimination, which this Court does not believe exists, the record is clear that after Plaintiff filed his first charge of discrimination, and returned to work in March 2012, he no longer had a weight restriction associated with his work.

10

Plaintiff's argument he was "forced" to have his prior weight restriction lifted has little merit with regard to his failure to accommodate claim. Plaintiff's Petition states "Plaintiff was compelled to work without accommodation, and exceeded his doctor's restrictions in order to remain gainfully employed, maintain his insurance, and purchase his life-sustaining medications." Here, Plaintiff returned to work in March 2012 pursuant to a medical note from his doctor that stated he was no longer subject to any restrictions. Therefore, Defendants were no longer under an obligation to accommodate Plaintiff. Plaintiff has no further evidence of a required accommodation other than his argument that "he had to remove it to continue his employment." There is no evidence before the Court that Plaintiff's doctor submitted the medical note for any reason other than to inform Defendants Plaintiff no longer had a weight restriction. In other words, there is no evidence Plaintiff's doctor was coerced, convinced or otherwise influenced to submit the doctor note to Defendants.[7] Defendants had every right to rely on the letter from Plaintiff's doctor and to believe, based on the letter, no accommodation was necessary because Plaintiff was no longer under a lifting restriction.

The Court is not persuaded by Plaintiff's own argument that "his position was in jeopardy unless he removed his restriction." Further, there is no evidence Plaintiff had any control over the doctor's opinion regarding his weight restriction. Here, the facts in the record establish that upon Plaintiff's return to work in March 2012, Defendants had received a medical note from Plaintiff's doctor removing Plaintiff's weight restriction. Upon receipt of that medical record, Defendants were simply no longer required to make any accommodations to Plaintiff based on his prior restriction. See e.g., *Breitkreutz v. Cambrex Charles City, Inc.,* 450 F.3d 780, 784 (8th

---

[7] With regard to any actions taken prior to March 2012, any such allegations of a failure to accommodate were conciliated during the resolution of the first charge of discrimination. That charge was withdrawn as part of the conciliation.

11

Cir. 2006)("If a restriction is based upon the recommendations of physicians, then it is not based upon myths or stereotypes about the disabled and does not establish a perception of disability.") Plaintiff has not provided any evidence to contradict the medical record, nor any evidence that Defendants acted inappropriately in relying on the medical note submitted by Plaintiff's doctor.

Finally, Defendants' summary judgment brief argues in order for Plaintiff to prevail under his failure to accommodate claim there must be an adverse employment action and some showing that Plaintiff suffered damages as a result. Plaintiff's position is that an adverse employment action is unnecessary to bring his claim for accommodation. He states "although there is a scarcity of case law in Missouri that suggests an independent cause of action for failing to accommodate an employee's request for reasonable accommodations, it stands to reason that failing to perform the affirmative duty of accommodating limitations is unfair treatment that affects the terms or conditions of employment." However, Plaintiff has not provided evidence of an adverse employment action or damage as a result of his alleged failure to accommodate.

While this Court believes this analysis is unnecessary based on its prior findings, the Court holds Plaintiff has failed to establish a genuine issue of material fact to survive summary judgment on his failure to accommodate claim. Upon Plaintiff's return from his short leave of absence in March 2012 he returned to his same position as a mechanic. Plaintiff argues he "was forced to lift his restrictions" and was transferred to another shift, but offers no evidence to support an adverse employment action. Further, as already stated herein, this Court finds that Plaintiff's cause of action for failure to accommodate cannot survive summary judgment.

## II. Count II – Retaliation.

Plaintiff's second Count is "Violations of the MHRA – Retaliation." Plaintiff argues he was retaliated against for filing his previous charge of discrimination. Plaintiff states

Defendants' conduct in eliminating his position constitutes discrimination under the MHRA and should be analyzed under the contributing factor standard.

The MHRA states:

It shall be an unlawful discriminatory practice:
....

(2) To retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter.

*Hill v. Ford Motor Co.,* 277 S.W.3d 659, 665 (Mo. 2009); citing § 213.070.2. The Court stated "retaliation for opposing discrimination or for filing a complaint constitutes discrimination under the MHRA and, like other forms of discrimination, is proved by showing the elements required by the MHRA, rather than by reference to cases such as *McDonnell Douglas* analyzing violations of federal law. To the extent Missouri cases decided prior to *Daugherty* suggest to the contrary, they are not to be followed. *Id.* A charge that is conciliated or withdrawn can still form the basis for a claim of retaliation.

To make a submissible claim for retaliatory discharge under the MHRA, Plaintiff is required to establish that: (1) defendant(s) suffered an adverse employment action, (2) his "protected activity" was a contributing factor in the action, and (3) he sustained damage as a direct result of the conduct. See *Williams v. Trans States Airlines, Inc.,* 281 S.W.3d 854, 866 (Mo. Ct. App. 2009); citing MAI 31.24. See also, *Thompson v. W.–S. Life Assurance Co.,* 82 S.W.3d 203, 207 (Mo.App. E.D. 2002).

As the Missouri Court of Appeals has noted, most employment discrimination cases are inherently fact-based and therefore often depend on inferences rather than on direct evidence. *Id.* at 867, citing *Daugherty*, 231 S.W.3d at 818. Direct evidence "shows a specific link between the

13

alleged discriminatory animus and the challenged decision, sufficient to support a finding that an illegitimate criterion actually motivated the employment decision." *Id.* However, direct evidence is not common in discrimination cases. *Id.* Therefore, circumstantial evidence may be used to prove the facts necessary to sustain a cause of action. *Id.,* citing, *Fabricor, Inc. v. E.I. DuPont de Nemours & Co*., 24 S.W.3d 82, 94 (Mo.App. W.D. 2000).

Here, Plaintiff does not have any direct evidence of retaliation. Rather, Plaintiff relies on the following "circumstantial evidence" to support his claim for retaliation: the irregularities in David Brown's employment classification; Defendant Shreve's role in determining the number of employees to be laid off; and tensions between Shreve and Plaintiff. Defendants argue Plaintiff cannot establish any connection between the elimination of Plaintiff's position due to the restructure and his statutorily protected activity, the filing of his first charge of discrimination.

Here, Plaintiff's first charge of discrimination was filed almost one year prior to the J.B. Hunt restructure. Plaintiff does not argue that the restructure was based on his "protected activity," rather, he argues Defendants eliminated his position rather than another employee's position, specifically Mr. Brown, based on his previous filing of a charge of discrimination. Plaintiff argues Mr. Brown should have been eliminated because he was a less senior employee.[8]

However, the evidence is undisputed that Mr. Brown held the position of a cage repairer, not a mechanic, at the time of the layoffs. Further, Plaintiff seems to argue Mr. Brown was moved to the cage repair position so that Plaintiff would be the least senior in his department when the layoffs occurred. However, this argument is unsupported. First, Mr. Brown was

---

[8] Tyson's Hourly Layoff procedure states "Full time Hourly Team Members in the area affected by the workforce reduction shall be laid off based on their length of service, provided Team Member can perform the essential functions of the available jobs."

14

transferred to the position of cage repairer in July 2011. Plaintiff did not file his first charge of discrimination until March 2012. Further, the J.B. Hunt contract negotiations began in August and October 2012 and the contract was not officially announced until December 2012, all of which occurred over a year after Mr. Brown was transferred to the cage repairer position. Further, and even more telling, is Mr. Brown's affidavit that states "prior to the J.B. Hunt restructure, Mr. Shreve offered me the opportunity to move back to the mechanic position, which I declined." Had Mr. Brown accepted the offer to transfer back to the mechanic position he would in fact have been less senior than Plaintiff and would have been subject to the layoff. That does not mean Plaintiff would not have also been subject to layoff. Given the J.B. Hunt agreement, Tyson did not need the same number of skilled mechanics but it did still need unskilled cage repairers. Instead, Mr. Brown's affidavit confirms that he was (and still is) employed as a cage repairer and not a mechanic – "because my job was classified as a cage repairer, I was not subject to layoff."

In addition, Plaintiff argues despite Mr. Brown's position as a cage repairer, he also performed the job duties of a mechanic. The record does reflect that there was some cross over duties between the cage repairers and the mechanics. However, the evidence establishes that each job required separate skills, and that the jobs were compensated differently. Further, Mr. Brown's affidavit confirms that he is in fact a cage repairer and previously declined the opportunity to transfer to the position of a mechanic (prior to the J.B. Hunt restructure). This Court is not persuaded that simply because at times Mr. Brown may help with a few duties in the mechanic shop that he was "a less senior mechanic" at the time Plaintiff's position was eliminated. There is simply no evidence to support this argument. Mr. Brown was compensated

15

as a cage repairer even though he occasionally performed a few minimal duties in the mechanic shop.

Plaintiff next argues Mr. Shreve's involvement in the layoffs supports his claim for retaliation. However, Plaintiff offers no evidence to dispute the fact that Defendants followed their Hourly Layoff Procedure. And while it is undisputed Mr. Shreve was involved in the determination of how the reductions of employees in the Noel facility would occur, there is no evidence Plaintiff's position was eliminated in retaliation of the filing of his first charge. As part of the layoffs in the truck shop, other employees, including 4 truck drivers, 1 dispatcher and another mechanics' position, other than plaintiff's, were also eliminated.

Plaintiff claims the "animosity" between Shreve and Plaintiff was due to his complaints and visits to human resources. Plaintiff's Petition alleges that "Defendant Shreve had remarked to at least two employees that he wanted to get rid of Plaintiff due to Plaintiff's complaints regarding his treatment in the shop and the filing of the complaint with the MCHR, and that he would terminate multiple employees just to get to Plaintiff." However, Plaintiff offers no evidence from any employee to support this claim, and further provides no evidence specific to his protected activity other than his own conclusions. Further, Plaintiff has not offered the testimony of any other employees to support this allegation. He does not even claim that he heard any specific statement from Shreve regarding his protected activity. Here, Plaintiff's vague, conclusory statements regarding his relationship with Shreve does not provide evidence, other than his own conjecture, that the elimination of his position was due to his protected activity. See *Shirrell*, 24 F. Supp. 3d at 865 (finding defendants were entitled to judgment as a matter of law on plaintiff's claims of retaliation under the MHRA when there were simply no facts in the record to suggest that plaintiff's complaints were the reasons for, or even a

16

contributing factor in, the decision to terminate plaintiff's employment); and *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 857 (8th Cir. 2012)("A party's unsupported self-serving allegation that her employer's decision was based on retaliation does not establish a genuine issue of material fact.").

Plaintiff simply alleges "Throughout the time that Plaintiff worked in the Truck Shop, he and Defendant Shreve had an acrimonious relationship, due *in part to Plaintiff's complaints to human resources.*" (*emphasis added*). There is no further evidence regarding what "complaints" Plaintiff is referring to, and no allegation regarding his previous filing of a charge of discrimination. Plaintiff simply argues Shreve had input in the restructuring effort (which is undisputed) and Shreve didn't like him and therefore resulted in "the retaliatory discharge of Plaintiff." However, Plaintiff has failed to provide evidence of any kind, including circumstantial evidence, to create a genuine issue of material fact regarding this claim.

Plaintiff further offers the testimony of another employee Mr. Joye to support his argument regarding Mr. Shreve. Mr. Foye's affidavit states "I believed that Tony Weeden and David Brown would both be losing their jobs due to seniority. However, McKee informed me that David Brown would not be part of the layoff, and instead Scott Robinson would be cut *because David was considered part of the live haul department.*" (*emphasis added*). This falls woefully short of any inappropriate link between Plaintiff's prior charge and the decision to eliminate Plaintiff's position. Again, there is no evidence correlating the elimination of Plaintiff's position to the filing of his first charge of discrimination, or any other protected activity.

Finally, with regard to Ms. Hood, the human resources employee for the plant, Plaintiff offers nothing more than the obvious fact that Ms. Hood was aware Plaintiff had previously filed

17

a charge of discrimination, and that she was also involved in the determination of layoffs. There are no specific allegations made with regard to Ms. Hood other than the handling of the first charge. Plaintiff alleges Ms. Hood "forced Plaintiff into a leave of absence" and investigated his accommodation with regard to his first charge. However, those claims were conciliated and Plaintiff's charge was withdrawn. There are no allegations regarding Ms. Hood's conduct after that event, or with regard to the restructuring, that involve alleged retaliation. As such, Plaintiff has failed to establish a genuine issue of material fact with regard to his retaliation claim against Ms. Hood.

Plaintiff also references that the temporal relationship between the protected activity and the adverse action may be considered, along with other evidence. *Williams,* 281 S.W.3d at 867. However, temporal proximity alone is not enough to survive summary judgment. In this case, the relationship is not so contemporary as to raise any casual connection. Almost one year had passed between the filing of Plaintiff's first charge of discrimination in approximately March 2012 and the layoffs that occurred in February 2013. While in some circumstances temporal proximity may raise a red flag regarding possible retaliation, in this case there is nothing to suggest the elimination of Plaintiff's position was tied to the charge that was filed almost a year before and resolved by conciliation.

Finally, as stated by Defendant, after Plaintiff's position was eliminated he took leave for approximately one year beginning in February 2013 and returning in February 2014. Upon his return he worked as a USDA Helper. He then requested a transfer, which was granted, and Plaintiff moved to the position of floor washer. Over the next several months Plaintiff took several leaves of absences. He was not terminated. Plaintiff remained an employee of Tyson until approximately October 2014. He simply was not allowed to continue in the position of

18

mechanic after it was outsourced to J.B. Hunt. Plaintiff is no longer able to work based on his permanent, total disability and ultimately that is why Plaintiff ended his relationship with Defendant.

### III. Individual Defendants – Mr. Shreve and Ms. Hood.

For the reasons stated above, this Court finds that Plaintiff has failed to establish a genuine issue of material fact with regard to his MHRA claims for failure to accommodate and retaliation against each of the Defendants. Therefore, Plaintiff's claims against the individual defendants also fails and summary judgment is also proper with regard to his claims against the individual Defendants.

## CONCLUSION

This Court finds that there is no genuine issue of material fact to suggest that Defendants failed to accommodate Plaintiff. Further, there is no evidence to suggest that Plaintiff's protected activity was the reason for, or even a contributing factor in, Defendants' decision to eliminate Plaintiff's position. As a result, Defendants are entitled to judgment as a matter of law on Plaintiff's claims of failure to accommodate and retaliation under the MHRA.

Wherefore the Court **GRANTS** Defendants' Motion for Summary Judgment, (Doc. No. 33), and **ORDERS** judgment entered in favor of Defendants.

**IT IS SO ORDERED.**

DATED: July 2, 2015

                                        */s/ Douglas Harpool*
                                        **DOUGLAS HARPOOL**
                                        **UNITED STATES DISTRICT JUDGE**